IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| IN:CIITE MEDIA, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHRISTMAS OF LIGHT PRODUCTIONS, LLC, NOISEBLOCK ENTERTAINMENT GROUP, LLC, E&D ASSETS, LLC, GARY BAKER, RYAN BAKER, EUGENE SAK, AND PROVIDENT GLOBAL CAPITAL, LLC, | ) NO.: ----------------------------- |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff In:ciite Media, LLC (hereinafter, "In:ciite"), brings suit against Defendants Christmas of Light Productions, LLC, Noiseblock Entertainment, LLC, E&D Assets, LLC, Gary Baker, Ryan Baker, Eugene Sak, and Provident Global Capital, LLC, for legal and equitable relief as more fully set forth herein. As grounds for relief, In:ciite states as follows:

## PARTIES AND JURISDICTION

1. Plaintiff In:ciite, is a Tennessee Limited Liability company which owns and operates a media services and event production company. At all times material hereto, In:ciite was registered to do business in Tennessee, and its principal place of business is located in Franklin, Williamson County, Tennessee at 3000 Meridian Boulevard, Suite 170, Franklin, Tennessee.

2. Defendant Christmas of Light Productions, LLC ("COLP"), is a foreign limited liability company with a principal place of business located in Florence, Alabama. COLP may be served with process by its registered agent, Eugene Sak, at 412 S. Court Street, Suite 500, Florence, AL, 35630. COLP is owned by Defendant Noiseblock, and Defendant E & D Assets, LLC.

3. Defendant Noiseblock Entertainment Group, LLC ("Noiseblock"), is a foreign limited liability company with a principal place of business located in Florence, Alabama. Noiseblock also does business under the assumed name of "Noiseblock Entertainment, LLC." Noiseblock may be served with process by its registered agent, Martin Abroms, at 201 S. Court Street, Suite 610, Florence, AL 35630. Noiseblock is owned, in whole or in part, by Defendants Gary Baker and Ryan Baker.

4. Defendant E&D Assets, LLC ("E&D"), is a foreign limited liability company with its principal place of business located in Florence, Alabama. Upon information and belief, Defendant E&D may be served with process by its registered agent, Eugene Sak, at 412 South Court St. Florence, AL 35630. E&D is owned by Defendant Eugene Sak.

5. Defendant Gary Baker is upon information and belief a resident of Alabama. Upon information and belief, Defendant Gary Baker may be served with process at his residence, at 112 Holland Drive, Sheffield, AL 35660.

6. Defendant Ryan Baker is upon information and belief a resident of Alabama. Upon information and belief, Defendant Ryan Baker may be served with process at his residence, at109 Dalton Lane, Tuscumbia, AL 35674.

7. Defendant Eugene Sak is upon information and belief a resident of Alabama. Upon information and belief, Defendant Sak may be served with process at his residence, at 109 Longleaf Way, Florence, AL 35634.

8. Defendant Provident Global Capital, LLC ("PGC") is a foreign limited liability company with its principal place of business in Killen, Alabama. Defendant PGC may be served with process via its registered agent, Bryan Robinson, at 75 Whitetail Xing, Killen, AL 35645.

9. At all times relevant hereto, Defendants Gary Baker and Ryan Baker were acting as agents, members, officers, managers, and/or owners of both COLP and Noiseblock. Thus, any liability established as to these Defendants is imputed to COLP and Noiseblock under the doctrines of agency and *respondeat superior.*

10. At all times relevant hereto, Defendant Eugene Sak was acting as an agent, member officer, managers, and/or owners of both COLP and E&D. Thus, any liability established as to this Defendant is imputed to COLP and E&D under the doctrines of agency and *respondeat superior.*

11. Diversity of citizenship exists among all parties, and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

12. This Court has personal jurisdiction over the Defendants as a result of the forum selection clause contained in Section 10 of the Master Services Agreement attached as Exhibit A hereto, as well as the assignment of that contact attached here as Exhibit B. Due to the Master Services Agreement's confidentiality clause, it—as well as this Complaint—is being filed under seal with the courts.

13. This Court also has personal jurisdiction over all of the Defendants under Tennessee's long arm statute, codified at Tenn. Code Ann. § 20-2-201 *et seq.* Each Defendant engaged in business transactions and/or other acts in Tennessee, including the use of real property, and each individual Defendant made representations regarding payments related to the show described herein that were directed into Tennessee and made for the express purpose of inducing In:ciite to rely upon such representations to its detriment within Tennessee.

14. Venue is proper in this Court, as the parties have chosen this Court as the proper forum pursuant to Section 10 of the Master Services Agreement attached as Exhibit A hereto, as

assigned under Exhibit B. Moreover, venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims presented below occurred in Williamson County, Tennessee.

15. Tennessee substantive law applies to the claims set forth in this Complaint pursuant to the choice of law provision set forth in Section 10 of the Master Services Agreement attached as Exhibit A hereto.

## FACTS.

The Master Services Agreement and the Christmas Product Made Under it.

16. In or about April 2015, Provident Global Capital ("PGC") and its owner, Bryan Robinson, approached In:ciite for the purpose of contracting with In:ciite to be their virtual record company.

17. Shortly thereafter, Defendant PGC and In:ciite entered into a contract entitled the Master Services Agreement, which was dated May 1, 2015. (See Master Services Agreement attached as Exhibit A hereto).

18. In the Master Services Agreement, Defendant PGC "engage[d] In:ciite to perform services . . . and provide deliverables . . . which are expected to include PGC music projects completed during the Term."

19. The Term of the Master Services Agreement between In:ciite and Defendant PGC commenced May 1, 2015, and was for a period of two (2) years thereafter.

20. Under the terms of the Master Services Agreement, Defendant PGC agreed to pay In:ciite a monthly amount of $30,000.00 plus all In:ciite travel expenses for each month in its two year term. In total, the Master Services Agreement required PGC to pay In:ciite $720,000.00 over its term, in addition to travel costs.

21. The initial product to be created by In:ciite under the Master Services Agreement was a Christmas product containing a newly recorded compact disc and an accompanying book, which was overseen by In:ciite. The title of this disc and book was <u>Thomas Kinkade's Christmas of Light</u>.

22. In:ciite has fully performed under the Master Services Agreement, creating 15,000 copies of <u>Thomas Kinkade's Christmas of Light</u>. Approximately 9,000 copies still remain unsold.

23. In:ciite received payment of the $30,000.00 monthly retainer from Defendant PGC for the months of May 2015 through September 2015, totaling an amount of $150,000.00. Despite the Master Services Agreement remaining in effect, In:ciite has not received payment of the monthly retainer for the months October 2015 through March 2016 from any source. Nor does it appear that payments for the remaining 14 months of the term will be forthcoming.

24. Due to the lack of payments, In:ciite is owed $180,000.00 in past-due payments, and $390,000.00 in prospective payments over the remaining term of the Master Services Agreement. As explained in paragraphs 44 through 52, below, the Master Services Agreement was assigned to Defendant COLP in November 2015, and thus COLP owes In:Ciite for all amounts unpaid under the Master Services Agreement.

<u>The Show Contract.</u>

25. Subsequent to entering into the Master Services Agreement, Defendant PGC and Robinson approached In:ciite about the creation of a live show containing music from the <u>Thomas Kinkade's Christmas of Light</u> product created under the Master Services Agreement. The show was to also bear the name "Thomas Kinkade's Christmas of Light."

26. In:ciite expressed concerns to Defendant PGC and Robinson that the show might not be viable due to the fact that planning had not begun at the beginning of 2015. In response to

this, Defendant PGC and Robinson promised In:ciite that they understood these concerns and would fully fund the show despite them.

27. As a result of the conversations regarding the potential show, In:ciite submitted an estimated budget of $1,500,000.00 to Defendant PGC and Robinson, stating the amount that it would cost for the show to be created and run from November 1, 2015 to January 2, 2016. Defendant PGC and Robinson approved the budget, and promised to fund the show.

28. After considerable discussions regarding show production and location, it was ultimately decided to have the show take place in Sevierville, Tennessee. In:ciite located a theatre in the area, The Smoky Mountain Palace located at 179 Collier Drive Sevierville, TN 37862, and negotiated a seasonal lease with its owners on behalf of Defendant PGC and Robinson.

29. In:ciite communicated to Defendant PGC & Robinson that the theatre was in a poor state and would require extensive renovations and constant oversight to ensure proper inspections and licensing in order to open the show on the expected opening day of November 1, 2015.

30. The expenses for renovating the theater were approved by Robinson and Defendant PGC, and included in a revised estimated budget, which was updated to reflect a total cost of $1,634,800.00 to oversee the renovations needed, as well as create, produce, and run the show.

31. Included in the $1,634,800.00 budget was a $120,000.00 production fee (hereinafter, the "Production Fee") payable to In:ciite as compensation for its work on the show. The budget was also designed to provide for the payment of any vendors In:ciite was required to hire to produce the show.

32. Defendant PGC agreed to the $1,634,800.00 reflected in the revised budget, and agreed to the $120,000.00 Production Fee payable to In:ciite included therein. This agreement was an enforceable contract (the "Show Contract").

33. In:ciite proceeded to perform under the Show Contract. It created the show, which incorporated state of the art high definition projection, projection mapping, and cinematography which brought the paintings of Thomas Kinkade to life as a backdrop to the newly created music from the musical product produced under the Master Services Agreement.

34. Defendant PGC and Robinson paid approximately $900,000.00 of the $1,634,800.00 owed to In:ciite under the Show Contract by the end of October 2015. The remaining $734,800.00 was left unpaid as of that date.

35. In November 2015 In:ciite learned that all of Defendant PGC's contracts, including the Show Agreement, were assigned to Defendant Christmas of Light Productions, LLC ("COLP"), as described below in paragraphs 44-52, which are incorporated herein by reference.

36. Because $734,800.00 was still required to fully fund the show as of mid-November 2015, In:ciite considered ceasing all work on the project due to the missing financial resources which Defendant COLP was now responsible for but had not produced. The possibility of such cessation was discussed with Defendants Gary Baker and Ryan Baker in Sevierville, Tennessee, on or about the week of Thanksgiving 2015. Each of these Defendants affirmatively promised In:ciite that In:ciite's Production Fee would be fully paid. These statements were made to induce In:ciite to continue working on the show despite the ongoing failure of Defendant COLP to perform under the Show Contract.

37. While making these representations, Defendants Gary Baker and Ryan Baker did so as agents, manager, officers, members, and/or owners of both Defendant COLP and Defendant Noiseblock, as Noiseblock stood to profit under COLP's operating agreement if the show were to be completed and able to be renewed the following year. Thus, under the doctrine of *respondeat*

*superior*, Defendants COLP and Noiseblock are vicariously liable for the actions of Defendants Gary Baker and Ryan Baker.

38. Upon information and belief, while making these representations, Defendants Gary Baker and Ryan Baker also did so at the behest of Defendant Eugene Sak, whom In:ciite believes instructed Gary Baker and Ryan Baker to make such statements as were necessary to convince In:ciite to continue working on the show. Thus, Defendants Gary Baker and Ryan Baker were acting as agents for Defendants Sak and E&D, which stood to profit under Defendant COLP's operating agreement if the show were to be completed and able to be renewed the following year.

39. Due to the promises of Defendants Gary Baker and Ryan Baker that Defendant COLP would pay In:ciite for its work, In:ciite proceeded with running the show for the remainder of the season. This included contracting with certain vendors that were to be paid out of the $734,800.00 not yet received. In so doing, In:ciite relied upon the promise made by Defendants Gary Baker and Ryan Baker on behalf of Defendant COLP, and/or at the behest of Defendant Sak.

40. The show opened on November 1, 2016 and closed on January 2, 2016. It was highly acclaimed by critics and loved locally. The show is set to return to Sevierville for a 2017 Christmas season.

41. Over the course of the show's run, Defendant COLP failed to provide the full $734,800.00 required to fund the show through its closing date. Defendant COLP also failed to pay In:ciite the $120,000.00 Production Fee owed under the Show Contract.

42. Because In:ciite was producing the show, it contracted with certain vendors for goods and services related to the show. The funds to pay those vendors were to come out of the $734,800.00 owed by Defendant COLP. At present, the amount certain vendors claim In:ciite owes them is approximately $104,791.03, all of which Defendant COLP was responsible to have paid

over to In:ciite under the Show Contract and the promises made to In:ciite. These expenses were incurred in reliance upon COLP upholding its obligations and promises to fund the show.

43. Despite repeated demands by In:ciite, Defendant COLP has failed to pay In:ciite both the $120,000 Production Fee and the $104,791.03 claimed by vendors.

<u>The Assignment of All Contracts and Debts from PGC to Defendant COLP</u>

44. During 2015, Defendant PGC and Robinson sought investors and/or purchasers to purchase all of the assets and liabilities of PGC.

45. On or about November 4, 2015, Defendant PGC and Robinson entered into a Purchase and Sale Agreement with Defendant COLP.

46. Pursuant to the Purchase and Sale Agreement, which is attached here as <u>Exhibit B</u>, Defendant COLP purchased from Defendant PGC "any and all contracts, licenses, sub-licenses, leases or agreements which (COLP) needs in order to produce the "Thomas Kinkade's Christmas of Light" production." Under the Purchase and Sale Agreement, Defendant PGC and Robinson specifically agreed to "sell, transfer, and assign to (COLP) all contracts necessary to complete the Production for commercial purposes, including but not limited to . . . <u>(ii) Master Services Agreement with In:ciite, LLC dated May 1, 2015 . . .</u> " (emphasis added).

47. Further, under the Purchase and Sale Agreement, Defendant PGC and Robinson agreed to sell, transfer and assign "all other contracts and agreements which are necessary to complete the Production or from which revenue related to the Production is to be generated which currently exists between Provident, Bryan Robinson and any third party."

48. Further, Defendant COLP purchased and/or received "any and all additional or non-incorporated original works <u>whether or not stated in any previously stated contracts or agreements which have heretofore been or will be written, composed or create, in whole or in part, as it pertains</u>

<u>to the "Thomas Kinkade's Christmas of Light" Production (the term "Production" to be liberally construed) . . .</u>" (emphasis added).

49. By operation of the Purchase and Sale Agreement, both the Master Services Agreement and the Show Contract were assigned to Defendant COLP, including any debt obligations existing thereunder.

50. As evidenced by the email attached here as <u>Exhibit C</u>, Defendant COLP recognized the assignment of the Show Contract and Master Services Agreement as valid.

51. Despite being obligated to pay In:ciite for the amounts owed under the Master Services Agreement and the Show Contract, Defendant COLP has never paid anything to In:ciite. At present, Defendant COLP owes In:ciite: (1) $120,000 under the Show Contract for the Production Fee; (2) $104,791.03 under the Show Contract for vendor payments/reimbursements; (3) $180,000.00 in missed payments owed under the Master Services Agreement; and (4) another $390,000.00 in future payments under the Master Services Agreement, which Defendant COLP is currently intentionally ignoring.

52. Upon information and belief, In:ciite alleges that the failure of Defendant COLP to perform under the Master Services Agreement and the Show Contract is due to the domination of Defendant COLP by its respective owners, and that such domination includes direct orders not to perform under the Master Services Agreement and the Show Contract, as well as deliberate undercapitalization and/or deliberate distributions of cash and assets from Defendant COLP to its owners despite knowledge of the debt owed to In:ciite. Defendant COLP specifically failed to collect capital contributions from its members required under its operating agreements despite knowing that Defendant COLP owed In:ciite a significant sum of money. Thus, Defendant COLP is merely the alter ego of its members.

## COUNT I: BREACH OF THE MASTER SERVICES AGREEMENT AS TO DEFENDANT CHRISTMAS OF LIGHT PRODUCTIONS AND PGC

53. The Master Service Agreement is a binding contract between Defendant PGC and In:ciite, which was later assigned to Defendant COLP, and is enforceable against Defendant COLP.

54. In:ciite has fully performed under the Master Services Agreement.

55. Defendant PGC breached its contractual obligations to In:ciite under the Master Services Agreement. Specifically, Defendant PGC failed to make the required monthly retainer payment of $30,000 in the month of October 2015.

56. Defendant COLP also breached its contractual obligations to In:ciite under the Master Services Agreement. Specifically, this defendant failed to make the required monthly retainer payments of $30,000 per month for the months of November 2015 through March 2016. Additionally, Defendant COLP failed to pay the amount of $30,000.00 owed for October 2015, for which it is also responsible via its assumption of the Master Services Agreement.

57. Each additional month in which payment is not made by Defendant COLP constitutes a continuing breach for which an additional $30,000 is owed to In:ciite by Defendant COLP.

58. By failing to perform under the Master Services Agreement, Defendants COLP and PGC have deprived In:ciite of the benefit of its bargain, harming In:ciite in the amount of $180,000.00 thus far, with that number expected to rise each month until the end of the Master Services Agreement's term.

## COUNT II: DECLARATORY JUDGMENT AS TO FUTURE PAYMENTS UNDER THE MASTER SERVICES AGREEMENT

59. The Master Service Agreement is a binding contract between Defendant PGC and In:ciite, which was later assigned to Defendant COLP, and is enforceable against Defendant COLP. Defendant COLP is currently in breach of this agreement by failing to make the monthly $30,000 payments required of it under the Master Services Agreement.

60. In:ciite has fully performed under the Master Services Agreement.

61. The determination of whether the Master Services Agreement requires Defendant COLP to prospectively pay $30,000 per month to In:ciite for the remainder of the Term of the agreement presents a justiciable question (a "case or controversy") which can be decided by this Court under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202.

62. In:ciite requests that the Court enter a declaratory judgment finding that In:ciite is prospectively entitled to payments of $30,000 per month from Defendant COLP, and that such payments must continue through the expiration of the Master Services Agreement's term.

63. Under 28 U.S.C. §§2201-2202 In:ciite requests that the Court enter an injunction requiring Defendant COLP to make such monthly payments to In:ciite as are required by the Master Services Agreement. As of the date of the filing of this Complaint, those prospective payments amount to $390,000.00.

## COUNT III: BREACH OF THE SHOW CONTRACT

64. The Show Contract was an enforceable contract between In:ciite, Defendant PGC, and Mr. Robinson. The contract is enforceable against Defendant COLP due to its assignment by Defendant PGC to Defendant COLP. Defendant COLP recognized and accepted the approved budget for the show in the full amount of $1,634,800.00 subsequent to the aforementioned

agreement, as evidenced by the email correspondence from Eugene Sak dated November 11, 2015 attached here as <u>Exhibit D</u>.

65. Under the Show Contract as assigned, Defendant COLP was to pay In:ciite a $120,000.00 Production Fee for In:ciite's creation and production of the Thomas Kinkade's Christmas of Light show.

66. Under the Show Contract as assigned, Defendant COLP was to make payments to In:ciite for the full budget of the show, to allow payments to be made to vendors that contracted with In:ciite. Defendant COLP failed to make the full $734,800.00 payment, resulting in an additional $104,791.03 of damages to In:ciite in the form of vendor bills that have been asserted against it.

67. Defendant COLP's failure to pay the full budgeted amount for the show, as well as the failure to pay an amount sufficient to cover the production fee, was a breach of the Show Contract, which has harmed In:Ciite in the amounts reflected above.

### COUNT IV PROMISORY ESTOPPEL RELATED TO THE MASTER SERVICE AGREEMENT (IN THE ALTERNATIVE TO COUNTS I & II).

68. As described above, and in response to In:ciite's stated concerns about the viability of the show Defendant PCG promised that full payment of amounts owed under the Master Services Agreement would be forthcoming.

69. The promises that In:ciite would be paid the amounts owed under the Master Services Agreement were made with the reasonable expectation that it would induce action or forbearance on the part of In:ciite—namely that In:ciite would perform in the manner contemplated by the Master Services Agreement.

70. In:ciite relied to its detriment on Defendant PGC's expressed and implied promise to pay the amount owed under the Master Services Agreement. Such reliance resulted in In:ciite creating the <u>Thomas Kinkade Christmas of Light</u> product.

71. The obligations created by Defendant PGC's promises were subsequently assigned and assumed in whole by Defendant COLP.

72. As a direct and proximate result of Defendant PGC's and Defendant COLP's failure to comply with the foregoing representations and promises, In:ciite has suffered substantial economic loss to date in the amount of $180,000.00 related to the Master Services Agreement. This loss is ongoing so long as the defendants fail to remit the $30,000.00 monthly retainer in contravention of their clearly stated contractual obligations.

73. An injustice to In:ciite can be avoided only by enforcement of the express and implied promises made by Defendant PGC and assumed by Defendant COLP: specifically, payment of the $180,000.00 of missed monthly payments, and payment of the forthcoming $390,000.00 owed by Defendant COLP to In:ciite.

### **COUNT V: PROMISORY ESTOPPEL RELATED TO THE SHOW (IN THE ALTERNATIVE TO COUNT III).**

74. As described above, and in response to In:ciite's stated concerns about the viability of the show production, Defendant PGC and Robinson promised that full payment of all show production costs would be forthcoming. These promises were assigned to and assumed by Defendant COLP and its members.

75. Defendants Ryan Baker and Gary Baker also promised In:ciite that In:ciite would be paid the $120,000 production fee promised to it for producing the Thomas Kinkade Christmas of Light show.

76. The promise made by Defendants Gary Baker and Ryan Baker was made on behalf of Defendants COLP, Noiseblock, and—upon information and belief—E&D and Eugene Sak. Thus, under the principles of *respondeat superior*, Defendants COLP, Noiseblock, E&D Assets, and Eugene Sak are all vicariously liable for damages caused by these promises.

77. Defendants' promises that they would pay the amounts owed under the Show Contract were made with the reasonable expectation that it would induce action or forbearance on the part of In:ciite-namely that In:ciite would perform in the manner contemplated by the Show Contract.

78. In:ciite relied to its detriment on these defendants' representations by producing the show and contracting with certain vendors in reliance upon funds coming from Defendant PGC and then Defendant COLP to pay such vendor fees for goods and services related to "Thomas Kinkade's Christmas of Light."

79. As a direct and proximate result of these Defendants' failure to observe their representations and promises, In:ciite has suffered substantial economic loss related to the production of "Thomas Kinkade's Christmas of Light."

80. An injustice to In:ciite can be avoided only by enforcement of the express and implied promises made by the Defendants, and awarding In:ciite $120,000 for its production fee, and $104,791.03 for amounts claimed by vendors.

## COUNT VI: PIERCING OF THE CORPORATE VEIL

81. Defendant COLP failed to perform as required under the Show Contract and under the Master Services Agreement.

82. Defendant COLP is the alter ego of its respective owners/members as it is fully dominated by its respective owners/members as described above. This is evidenced by Defendant

COLP failing to collect all capital contributions required under its operating agreement, its members intentionally choosing not to pay the amounts owed to In:ciite, and by Defendant COLP distributing money to its members that should have been used to pay In:ciite the amounts owed.

83. The failure of Defendant COLP to perform under the Show Contract and under the Master Services Agreement is due to its total domination by its respective owners.

84. Given the foregoing, the corporate form of Defendant COLP must be disregarded, and its individual members/owners must be liable for the acts of the entity.

WHEREFORE, the Plaintiff, In:ciite media, LLC, by and through counsel, respectfully prays for a judgment awarding damages in an amount to be determined at trial, but in any event in excess of $795,000.00 and including the following relief:

1. Compensatory damages and all consequential and incidental damages resulting from defendants' breach of contract;

2. Compensatory damages and all consequential and incidental damages resulting from defendants' failure to abide by the promises they are not estopped to deny;

3. Equitable relief in the form of a declaratory judgment, and specific performance and/or an injunction, requiring Defendants to pay $30,000 per month to In:ciite for the remainder of the Master Services Agreement's term;

4. That the plaintiff's costs be awarded, including discretionary costs, and any and all prejudgment interests at the statutory rate;

5. That an attachment and/or preliminary injunction issue preserving the assets of the Defendants so as to prevent fraudulent transfers; and

6. For any and all further legal and/or equitable relief as the Court deems just and proper.

        s/ Jason K. Murrie
        Jason K. Murrie (#27441)
        Sean Wlodarczyk (#30410)
        CORNELIUS & COLLINS, LLP
        Suite 1500, Nashville City Center
        511 Union Street
        P. O. Box 190695
        Nashville, TN 37219
        (615) 244-1440

        Attorneys for Plaintiff,
        In:ciite Media, LLC